Eric Kirkland  SBN:151215
eric@ekirklandlaw.com
Kirkland Law
555 W. 5th St., 35th Floor
Los Angeles, California 90013
O: (424) 265-7344
F:  (818) 217-8180

Attorney for Defendants

UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIARA SALOMONI, an individual<br><br>    Plaintiff,<br><br>  v.<br><br>ANGIE VENTURELLA, an individual;<br><br>LYNN VENTURELLA, an individual, and<br><br>DOES 1-10, inclusive,<br><br>    Defendants. | Case No.: 2:17-cv-4017<br><br>**OPPOSITION TO ISSUANCE OF PRELIMINARY INJUNCTION, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, DECLARATIONS OF ANGIE VENTURELLA, LYNN VENTURELLA, AND SUPPORTING EXHIBITS**<br><br>**Date:**    July 17, 2017<br>**Time:**   10:00 a.m.<br>**Courtroom**: Courtroom 3d, 8th Floor<br>                    350 W. First Street,<br>                    Los Angeles, CA 90012<br><br>**Judge:**  Hon. Christina A. Snyder |

COME NOW Defendants Angie Venturella, an individual, and Lynn Venturella, an individual, in opposition to Plaintiff, Chiara Salomoni's motion requesting the Court to issue a preliminary injunction against Defendants:

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Legal Standard

Under the federal law, a movant seeking a preliminary injunction must demonstrate (1) a substantial likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of an injunction, (3) a balance of hardships favors the Plaintiff, and (4) an injunction would not disserve the public interest. Winter v. Natural Resources Defense Council (2008) 555 U.S. 7. Plaintiff misstates the holding of the Winter Court where the court expressly held that that the Plaintiff must show a likelihood versus a possibility of irreparable harm regardless of the likelihood of prevailing on the merits. Id at 17. The evidence below will show that Partnerships that Plaintiff was involved with do not own the intellectual property rights and that Plaintiff's probability of prevailing on the merits is highly remote.

## II. Statement of Facts

This case arises out of a general partnership ("GP") and a separate joint venture partnership ("JV"). The GP was formed between three partners to publish a book that used pictures of people dressed in very elaborate mermaid costumes to promote awareness of protecting the ocean and it is inhabitants. The three partners were Defendant Angie Venturella ("Angie"), Plaintiff Chiara Salomoni ("Plaintiff"), and Eric Ducharme ("ERIC"). Plaintiff and Defendant Angie were young entrepreneurs that were just finishing college that shared a passion for photography and ocean conservation.

The JV partnership was between Angie and the Plaintiff. The agreement was to co-promote each other's photography businesses. Both the GP and the JV used the intellectual property rights held by The Pinkerton Modeling Agency ("PMA") to the name "Project Mermaids" and to the URL projectmeraids.com ("IP") to promote the GP and JV by posting pictures of the photo shoots on the website

projectmermaids.com and the social media accounts using the name Project Mermaids.

In approximately late 2012, Angie came up with the idea of creating awareness of ocean conservation by taking pictures of celebrities dressed in mermaid costumes and posting them to social media sites to promote a book that she would sell and donate half of the net proceeds to the Charity Save Our Beach ("Charity"). Angelina Decl.¶¶4,5,6. In approximately May of 2013, Angie entered into an agreement with PMA, a company owned by Angie's mother Defendant Lynn Venturella ("Lynn"), in which PMA would secure agreements with Charity and ERIC to participate in the book in exchange for the IP rights in the name Mermaid Project. Angelina Decl.¶5.

On June 27, 2013, Lynn contacted ERIC, the founder of Mertailor a company which produced elaborate mermaid costumes. Lynn Decl.¶5. The purpose of the contact was to propose a partnership between ERIC and the Mermaid Project in which ERIC would loan the costumes for celebrity photo shoots in which the pictures would be used in a book about ocean conservation. Lynn Decl. ¶5 and Angelina Decl.¶5 The parties came to an agreement and signed a partnership agreement on June 28, 2013 in which ANGIE and ERIC would split the net proceeds from the sale of the book after a portion of the proceeds were donated to Charity. *See* Lynn Decl. ¶5, Exhibit 1

On June 11, 2013, Lynn contacted Charity about participating in the book. After much communication, on or about July 2, 2013, the Charity agreed to let Angie use their name to promote the book in exchange for Charity receiving fifty percent (50%) of the net proceeds from the sale of the book. Lynn Decl. ¶5

On June 29, 2013, Angie set up a personal Instagram account and began posting pictures of celebrities in ERIC's mermaid costumes. Angelina Decl.¶6. The first was

of Janel Parish in which Angie took pictures of Janel under and above water in a mermaid costume. See Exhibit 2. She followed that with another photo shoot with Vanessa Hudgens and Kim Hildogo on June 30, 2013, and posted those pictures on Instagram. See Exhibit 3. She continued taking pictures of celebrities and models and posting them on her Instagram account which started to attract a following. See Exhibit 4.

Lynn wanted to acquire the URL mermaidproject.com, however, it was taken. She decided instead to acquire the URL projectmermaids.com and on October 3, 2013, Lynn secured the URL projectmermaids.com under her business name The Pinkerton Modeling Agency and on October 4, 2013, Angie set up an Instagram account under the name Project Mermaids and posted some of the pictures from her personal Instagram account on the same day. Exhibit 4,5, & 6 and Lynn Decl.¶6. In approximately September of 2013, Plaintiff contacted Angie and expressed interest in supporting the cause. Angelina Decl. ¶7. On or around September 24, 2013, Lynn orchestrated an agreement in which Plaintiff joined the book partnership between ERIC and Angie as a "Contributing Photographer" in which she agreed to provide photos for the book in exchange for a one-third ownership in the net proceeds of the book. Exhibit 7 and Lynn Decl. ¶7.

Over the next seven (7) weeks Angie and Plaintiff began working on the book project in earnest and discovered that they could use the Project Mermaid social media accounts to promote their general partnership for the book, but they could also promote their individual photography businesses. Angelina Decl. ¶8. On or about November 14, 2013, Angie and Plaintiff entered into a joint venture agreement and filed a fictitious business filing under the name Project Mermaids. Angelina Decl. ¶9. Under the terms of the joint venture agreement, each party would regularly post pictures to the Project Mermaid website and Instagram account

and they would also advertise their photography businesses through joint or individual tours in which they would book photography shoots for paying customers. Angelina Decl. ¶9.

Angie and Plaintiff would keep whatever money they made from their customers less their travel cost and other expenses. Angelina Decl. ¶10. The nature of the JV was each would have a separate business in which they would use the Project Mermaid sites to promote it. Angelina Decl. ¶10. The customers would pay into a common bank account before they would travel to do the photo shoot. Angelina Decl. ¶10.  The record keeping proved to be challenging for the young entreprenuers in that some prepaying customers would cancel their shoot and requests refunds and the cost do to the tour was unknown until it was over which was typically many months in the future. Angelina Decl. ¶10. Despite the bookkeeping complexity, Angie and Plaintiff always acted consistently with that understanding during the entire portion of the JV partnership. Angelina Decl. ¶10. There was never an agreement in which they would split the proceeds of their photography businesses based upon ownership percentages and it was always on the basis of what they earned less their direct expenses. Angelina Decl. ¶10.

Relatively early on tension between Angie and Plaintiff started to arise due the great disparity of original photographs being posted by Plaintiff to the Instagram site versus the number being posted by Angie. Angelina Decl. ¶11. During the GP and JV period, Angie posted 839 original photos to the sites and Plaintiff posted 277 original photos. Angelina Decl. ¶11.

As a way of addressing some of these issues and the mounting concern that Plaintiff may not honor the GP agreement, the general partners entered into a written agreement on February 11, 2016, to assuage the fears of Angie and Eric. Angelina Decl. ¶12. The two primary concerns of Angie and Eric were that Planitiff was not

providing the photos that she had taken for the purpose of promoting the book to the GP in an electronic version that was suitable for publishing the book. Angelina Decl. ¶12. There was also a conern that Plaintiff would use the GP's photos to start and promote Plaintiff's own business that excluded the general partners Angie and ERIC as well as violated the terms of the JV partnership. Angelina Decl. ¶12. The agreement sought to make it clear that she was under the obligation to perform under the GP and JV agreements and if she posted the pictures to a third party site she would lose her interest in the partnerships. Angelina Decl. ¶12.

The agreement was not written by an attorney and had more of a declaration type feel in which the Plaintiff, makes twenty one (21) separate declarations with five (5) subparts that she will honor the GP and JV agreements. Exhibit 8. Obviously, her partners had lost trust in Plaintiff and demanded unabigous statements of her intent to perform and that her failure would result in a the loss of her partnership interest. More specficially, in paragraph 3 of the agreement it states:

> *"I understand and agree that all the images shot on behalf of Project Mermaids can only be used to promote the project or for the purpose of the art show and book release."*

Section 5 expressly addresses the ownership of the photo taken with the mermaid costumes that were provided by ERIC to the GP. Section 5 reads as follows:

> *"I understand that I am submitting my images to be published under the copyright of Project Mermaids and for the purpose of distributing and selling a published book, either by a third party publisher or self-published."*

Section 7 goes on to state:

> *"Any images selected in the book and the art show may not be used for personal sale or promotion."*

Section 8 addresses the JV partnership:

> "I agree that all images used for the purpose of promotion/press, not for the book, will be promoted via the Project Mermaids social media accounts and executed by a Social Media Coordinator."

Section 10(a) directly addressed the consequences to the Plaintiff for her using the photos for a purpose other than the GP and JV. It reads as follows:

> "I agree that **I will be liable for loss of partnership or termination of this contract** if I use a third party social media service or application."

The very next statement that is conditioned upon the prior statement states:

> "I agree that all passwords of the social media accounts will be available to Angie Venturella, Chiara Salomoni, Edward Garcia, and Cristina Whalin."

What is abundantly clear is that Plaintiff's GP partners and her JV partner were feed up with Plaintiff's unpredictability and for them to continue they wanted clear statements from the Plaintiff that she would live up to her agreements or she would lose her partnership. Angelina Decl. ¶12. Within a few months of signing that agreement, Plaintiff was in breach, usurping partnership opportunities and competing with both the GP and the JV without the knowledge of her partners Angelina Decl. ¶13. Lynn is a seasoned business person in the modeling world which gave her the wisdom to retain the IP rights to Project Mermaids in lieu of a partnership interest because her decades of experience with business people in their early 20s gave her insight that they often don't live up to their obligations. Lynn Decl.22. Plaintiff's actions are a case in point.

## ARGUMENT

**III. Movant is Unlikely to Prevail on the Merits.**

    **A. PLAINTIFF's Breach of the February 11, 2016 Agreement Terminates Her Partnership Interests.**

1 Under the California Uniform Partnership Act of 1997, a general partnership is created when partners, even orally, agree to work together in a common business enterprise. In this case the Plaintiff entered into an oral agreement with Angie and ERIC which was later defined her obligations under the written agreement on February 11, 2016. Exhibit 8.

Paragraph 10(a) states the following: "I agree that I will be liable for loss of partnership or termination of this contract if I use a third party social media service or application." *Id*. Plaintiff registered and obtained a domain name via GoDaddy.com entitled "Mermaids for Change." Angelina Decl.¶14. Plaintiff breached the terms of the Agreement the moment she began posting photographs intended for Project Mermaids on the social media Instagram account she created called Mermaids for Change. Angelina Decl.¶14. On October 18, 2016, Plaintiff made her first post on her Instagram account Mermaids for Change to promote her competing business. Angelina Decl.¶14.

Plaintiff's most egregious violation of the partnerships was a shoot in December 2016, that was planned in June of 2016, of Ashley, an actress that had volunteer to do a photo shoot for Project Mermaids. Angelina Decl.¶15. Plaintiff shot still photos and made a video utilizing ERIC's mermaid costumes intended for the GP and posted the photos and the video on Plaintiff's competing Mermaids for Change Instagram site on December 17, 2016. *See* Exhibit 9, 10.

In a similar situation, Plaintiff posted underwater photographs of a model named Jade on her Mermaids for Change Instagram when Jade believed that the shoot was for the benefit of Project Mermaids. Angelina Decl.¶16. Jade saw her photos posted on Plaintiff's Mermaids for Change Instagram account and was confused and reached out to Angie for an explanation. Angelina Decl.¶16. See Exhibit 11. These revelations that Plaintiff was competing covertly in 2016 have kept coming over the

last several months. See Exhibit 12. Angelina Decl.¶16. Plaintiff has clearly breached the February 11, 2016 agreement which resulted in the loss of her partnership interest. The likelihood of the Plaintiff prevailing on the merits are remote at best and far short of the burden required.

### B. Plaintiff Lacks Privity with the IP Holder.

Lynn's company PMA is the owner of the IP rights to project mermaids and has granted a revocable license to Angie to use the name for the Project Mermaids Instagram account. Lynn Decl. ¶7 Although Lynn has assisted Plaintiff and Angie with their respective businesses, Lynn or PMA has never entered into an agreement with Plaintiff, nor does the Plaintiff allege they have. Without privity of contract, there is no obligation for Lynn or PMA to grant a license without consideration to Plaintiff to use the name to advertise Plaintiff's photography business. Lynn Decl.¶21. Lynn's business experience with young entrepreneurs guided her to protect her daughter by taking ownership of the IP in exchange for Lynn's assistance with putting the businesses together. Lynn Decl.¶22. A fact that Plaintiff does not like, but, nevertheless is true.

### C. PLAINTIFF Withdrew from the Partnership

A dispute arose over Plaintiff's lack of participation in the JV over the last half of 2016. Angelina Decl.¶18. Plaintiff was unresponsive to Angie's numerous requests to talk about Plaintiff's lack of participation in the JV. Plaintiff's response was to withdraw from the JV. Lynn Decl.¶23, Exhibit 13. In an email dated January 30, 2017, Plaintiff wrote to Lynn and said among other things:

> *"Lynn, . . ., I hereby request that we retroactively dissolve me from the company. I believe that this is the best course of action . . ."*

Plaintiff's motion is bewildering in light of the facts above, but, nevertheless very clear that she relinquished her rights in the JV and GP. *Id*.

## IV. PLAINTIFF will not Suffer Irreparable

Plaintiff began her competing business over a year ago on July 12, 2016, when she registered and obtained the domain name: Mermaids for Change and opened the competing Instagram account. Angelina Decl.¶¶16,17. Plaintiff's business has been active for over nine (9) months and has been built in part on the IP she converted from her partners. *Id*. Plaintiff has a full tour schedule through December 10, 2017 to shoot photographs for paying customers at the same rate that she did when she advertised on Project Mermaids. Exhibit 14. Plaintiff recently posted a photo from a shoot she did in Miami on her website and Instagram account. Exhibit 15. Plaintiff's future business looks fine.

Irreparable harm is also inconsistent with Plaintiff's January 30, 2017, withdrawal from the partnership. Defendants believe that Plaintiff is merely upset that the she is not getting the support that Angie is receiving and that she didn't have the resources to defend herself from the lawsuit.

## V. Defendant will be Harmed more than Plaintiff if the Injunction is Granted

Social media is much like any other content based advertising medium, whether it be TV, radio or podcasts over the internet. Angelina Decl.¶11. You provide the followers fresh content on a regular basis and they don't mind receiving some advertising from you. *Id.* Provide little original content and a lot of advertising and the followers will stop following. A basic concept that Plaintiff understands.

The primary dispute that arose in the last half of 2016 between Plaintiff and Angie was that Plaintiff started to dramatically reduce the content she was putting on Project Mermaids website and Instagram account, apparently to produce it for Plaintiff's competing business. Angelina Decl.¶18. Despite Plaintiff's consistent representations that she would confer with Angie before posting advertisements for her photography business on the Instagram account, Plaintiff continued to do it until

PMA and Angie decided to deny her access to the account. *Id*. During that time, Plaintiff only posted 31% of the original photos and at the same time posted 82% of all the advertising posted for Plaintiff's photography business. *Id.* Below are the posting of original content starting the on the 16th of each month until the 15th of the following month.

| Plaintiff | May | June | July | August | Sept. | Oct. | |
|---|---|---|---|---|---|---|---|
| Photos | 31 | 26 | 23 | 19 | 18 | 13 | 130 |
| Adverts | 12 | 13 | 11 | 11 | 12 | 8 | 67 |
| Angie | | | | | | | |
| Photos | 47 | 55 | 49 | 50 | 44 | 39 | 284 |
| Adverts | 3 | 3 | 2 | 4 | 0 | 2 | 14 |

Angie pleaded with Plaintiff to stop and she was either ignored, or Plaintiff refused to keep her word, a common theme with the Plaintiff. Angelina Decl.¶19.

Angie will be harmed if Plaintiff is allowed to post advertisements for her competing business. Instagram has very strict rules that if they are violated, the account will be suspended and that will only benefit the Plaintiff. The risk is too severe for Angie.

## CONCLUSION

Defendant's respectively request that the Court deny Plaintiff's motion for preliminary injunctive relief.

Dated this 25th day of June, 2017

By: *(signature)*
Eric Kirkland  SBN:151215
Kirkland Law
555 W. 5th St., 35th Floor
Los Angeles, CA 90013
(424) 265-7344
Attorney for Defendants